IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WESTPORT INSURANCE,<br><br>    Plaintiff,<br><br>vs.<br><br>RAY QUINNEY & NEBEKER, BRENT D. WRIDE, DAVID K. LAURITZEN, EDUCATORS MUTUAL INSURANCE ASSOCIATION OF UTAH, and DAVID K. LAURITZEN PC,<br><br>    Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 2:07-CV-236-TC |
| RAY QUINNEY & NEBEKER, BRENT D. WRIDE, DAVID K. LAURITZEN,<br><br>    Third Party Plaintiffs<br><br>vs.<br><br>ST. PAUL FIRE & MARINE INSURANCE CO.,<br><br>    Third Party Defendant. | |

    Third-Party Defendant St. Paul Fire & Marine Insurance Company (St. Paul) moves for

summary judgment on claims brought by Defendants and Third-Party Plaintiffs Ray Quinney &

Nebeker, P.C., Brent D. Wride, and David K. Lauritzen ("RQN").[1] RQN brought claims against St. Paul, its former malpractice insurance carrier, for failure to defend and indemnify them in a now-settled malpractice claim brought by Educators Mutual Association of Utah (EMIA) against RQN. St. Paul moves for summary judgment on the breach of contract claim contending that there is no evidence that RQN gave St. Paul notice of the EMIA claim as required by the written policy. St. Paul also moves for summary judgment on RQN's breach of implied covenant of good faith and fair dealing and on Mr. Wride and Mr. Lauritzen's claims for intentional and negligent infliction of emotional distress on the ground that nothing in the record supports those claims.[2]

Because RQN has provided evidence that it informed St. Paul of the EMIA letters, the court DENIES summary judgment for St. Paul on the breach of contract and breach of the covenant of good faith and fair dealing claims. The court also DENIES summary judgment for St. Paul on Mr. Wride and Mr. Lauritzen's negligent infliction of emotional distress claims because there are disputed factual issues, but GRANTS summary judgment on their intentional infliction of emotional distress claims because St. Paul's conduct was not outrageous.

BACKGROUND

St. Paul provided professional malpractice insurance to RQN for ten years ending April 5,

---

[1] Although Mr. Lauritzen is no longer employed by RQN, he joined RQN's response to St. Paul's motion and provided a supplemental response with more information about his personal emotional distress claims. Because Mr. Lauritzen's position is the same as RQN's concerning the contract claims, the court refers to them collectively in the portions of the order addressing those claims.

[2] The factual and procedural background underlying this dispute was described in detail in the court's Order and Memorandum Decision issued on August 7, 2009. For that reason, the court will discuss only those facts necessary to explain this order.

2005.  During the coverage period, RQN exchanged letters with one of its clients, EMIA, concerning a potential malpractice claim against RQN.[3]  EMIA did not pursue the claim further during the coverage period.  The St. Paul policy required RQN to submit notice of potential claims in writing during the coverage period.

There is no question that RQN did not submit written notice of the EMIA claim, but RQN argues that St. Paul is equitably estopped from enforcing the written notice provision because St. Paul's agent, Brett Nilsson, informed RQN's representative, Eric Visser, that no written notice was required.  Although Mr. Nilsson cannot remember the specific conversation, he does not dispute that it occurred.  Furthermore, Mr. Nilsson states that the response would have been consistent with other conversations Mr. Nilsson had with Mr. Visser under similar circumstances.

On August 7, 2009, the court issued an order denying summary judgment for St. Paul on this same issue (the "August Order").  In that decision, the court held that if RQN properly reported the EMIA letters to St. Paul, and the letters represented circumstances that could result in a claim, St. Paul would be obligated to provide coverage for RQN's claim arising from the EMIA letters. The  court also held that while equitable estoppel could abrogate the written notice requirement, RQN had not submitted admissible evidence that it had provided oral notice of the potential EMIA claim to St. Paul.  The court granted RQN's Rule 56(f) motion to conduct further discovery on whether RQN informed Mr. Nilsson of the EMIA letters or whether St. Paul learned of the correspondence.

---

[3]The court has already decided that there is a disputed factual issue about whether RQN's correspondence with EMIA represented circumstances which could result in a claim. (Order and Mem. Dec., August 7, 2009, at 15.)

ANALYSIS

St. Paul moves for summary judgment, arguing that there is no evidence that RQN provided any notice of the EMIA claim to St. Paul because pattern and practice evidence should not be admitted under the circumstances of this case. St. Paul also moves for summary judgment on the emotional distress claims brought by Mr. Wride and Mr. Lauritzen.

Summary Judgment Standard

The court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must construe all facts and reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seegmiller v. LaVerkin City, 528 F.3d 762, 766 (10th Cir. 2008). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Equitable Estoppel

The court held in its August Order that if RQN can prove that it gave oral notice of the EMIA letters to St. Paul and that St. Paul informed RQN that it did not need to provide written notice of the claim, then St. Paul could be equitably estopped from denying the claim due to RQN's lack of notice. Under Utah law,

> Estoppel may be applied to modify terms of an insurance policy when (1) an agent makes material misrepresentations to the prospective insured as to the scope of coverage or other important policy benefits, (2) the insured acts with prudence and

4

in reasonable reliance on those misrepresentations, and (3) that reliance results in injury to the insured.

Youngblood v. Auto-Owners Ins. Co., 158 P.3d 1088, 1094 (Utah 2007). A statement by St. Paul that claims need not be reported in writing constitutes a material misrepresentation of the scope of coverage.

Although discovery on oral notice yielded no proof that RQN provided oral notice to St. Paul of the potential EMIA claim, RQN argues that St. Paul's pattern and practice of discouraging written notice of claims can be admitted to show either that RQN provided oral notice of the potential claim this particular instance or that they were not required to do so.

Pattern and Practice Evidence

RQN seeks to admit pattern and practice evidence under Federal Rule of Evidence 406:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Generally, evidence of routine practice must meet three requirements: (1) the evidence "should be of such a nature that it is unlikely that the individual instance can be recalled or the person who performed it can be located," (2) the evidence "must be specific conduct that is engaged in frequently by the group," and (3) the number of instances of such behavior must be large enough that doubt about a single instance does not destroy the inference that the practice existed." 23 Charles Alan Wright & Kenneth W. Graham, Federal Practice and Procedure § 5274, at 45-48 (1980).

RQN points to several cases where the court has allowed pattern and practice evidence about insurance company conduct. In Morris v. Travelers Indem. Co. of Am. 518 F.3d 755, 761

(10th Cir. 2008) the Tenth Circuit held that an insurance agent's pattern and practice of explaining insurance coverage in a way that complied with Colorado law created a factual issue about whether the insurance agent did so in a particular case even though the agent couldn't specifically remember informing the insured of the policy options. Id. at 762. The Tenth Circuit reversed the district court's summary judgment for the insurance company because the pattern and practice evidence didn't prove compliance as a matter of law but only created a fact issue. Id; see also, Rosenburg v. Lincoln Am. Life Ins. Co., 883 F.2d 1328, 1336 (7th Cir. 1989) (holding that the testimony of twenty-nine insurance company clients that the insurance company had a pattern and practice of giving oral assurances of coverage in contrast with written policy language was sufficient to uphold jury verdict), Martin v. Thrifty Rent-a-Car, No. 96-2229, WL 211786 at * 4 (6th Cir. April 23, 1998) (allowing the admission of Thrifty's standard rental agreement under Rule 406 event though there was no specific evidence that the rental agreement had been provided to the customer).

St. Paul contends that the interaction between Mr. Visser and Mr. Nilsson is not habit evidence because it was not reflexive, instinctive, or non-volitional. But St. Paul mistakenly applies the rule for habit evidence rather than evidence of routine practice. "Habit applies to individuals; routine practice applies to organizations. The rule authorizes the admission of evidence of a person's habit or an organization's routine practice to prove that the conduct of the individual or organization on a particular occasion was in conformity with that habit or routine practice." United States ex rel. El-Amin v. George Washington Univ., 533 F. Supp. 2d 12, 26 (D.D.C. 2008) "Courts generally apply a more liberal standard to evidence of office routine than they apply to evidence of personal habit because there is no concern that the evidence could be

used improperly as character evidence." Am. Jur 2d Evidence § 403.

St. Paul points to El-Amin to support its argument that RQN cannot meet the Rule 406 requirements for showing a pattern and practice of interaction between St. Paul and RQN. In El-Amin, the plaintiff sought to admit evidence that a group of anesthesiologists had a habit or routine practice of bilking medicare. El-Amin, 533 F. Supp 2d. at 31. The court held that the proponents of the routine practice evidence had not shown a uniform response by the anesthesiologists and had not explained how an anesthesia procedure could "be reduced to a semi-automatic behavior." Id. at 30-31.

The routine practice alleged in this case is more reflexive and better supported. The declarations submitted by RQN state that when RQN heard from a client that the client may have a malpractice claim, Mr. Jardine directed his office manager, Mr. Visser, to contact St. Paul's agent, Mr. Nilsson, to discuss the claim. Mr. Nilsson would check with St. Paul, and would instruct Mr. Visser that it was not necessary to formally report or provide notice of threatened claims until and unless a formal complaint was filed against RQN. (Supplemental Dec. James Jardine ¶ 7 attached as Ex. A to Mem. Opp. Summ. J.) RQN and St. Paul engaged in this conduct about ten times per year, which is often enough that the failure to find concrete proof of the interaction in this case does not cast doubt on the likelihood that RQN followed this procedure when confronted by the EMIA letters. Further, even if RQN did not provide oral notice in this specific instance, the frequency of St. Paul's instruction not to submit written notice creates an estoppel issue concerning the written notice requirement.

St. Paul also argues that the proposed evidence should not be considered because the declarations are not based on personal knowledge and are therefore prohibited under Federal

Rule of Evidence 602. Specifically, St. Paul objects to the declaration of James Jardine, the managing director of RQN from 1990 until 2007. In El-Amin, the court excluded evidence of routine practice submitted by some surgeons detailing the pattern and practice of all of the surgeons because those surgeons did not have personal knowledge of all of the surgical procedures. Id. at 25-26. Unlike that case, Mr. Jardine as managing partner of RQN, had familiarity and personal knowledge with all potential malpractice claims against the firm. Mr. Jardine's declaration is sufficiently based in personal knowledge to be admissible under rule 602.

Reasonable Reliance

St. Paul contends that RQN did not reasonably rely on St. Paul's misrepresentations about the notice requirement because there were several written letters and emails from St. Paul to RQN that stated the written notice requirement as a disclaimer contained in the email. Further, St. Paul argues that RQN did submit written notice of some potential claims during the coverage period. The fact that RQN did submit some claims in writing and received occasional notices that potential claims should be in writing does not preclude reasonable reliance on St. Paul's material misrepresentations. Whether RQN reasonably relied on St. Paul's misrepresentations is a disputed factual issue.

Covenant of Good Faith and Fair Dealing

St. Paul next argues that it did not breach the covenant of good faith and fair dealing. The covenant of good faith and fair dealing "requires the insurer to deal with laymen as laymen and not as experts in the subtleties of law and underwriting and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract." Beck v. Farmers Ins. Exch., 701 P.2d 795, 801 (Utah 1985). St. Paul argues for summary judgment because it is debatable whether it

was required to insure RQN for the EMIA claim. RQN counters that there are issues of fact about whether St. Paul properly investigated the EMIA claim before denying it. RQN further contends that if St. Paul indeed misrepresented the reporting requirement in order to later deny coverage, that would be a breach of the covenant of good faith and fair dealing. RQN has submitted evidence that St. Paul made misrepresentations about the written notice requirement. Because such misrepresentations would be a violation of the covenant of good faith and fair dealing, the court denies summary judgment on this issue.

Emotional Distress Claims

St. Paul argues that there is insufficient evidence to support Mr. Wride's and Mr. Lauritzen's claims of intentional and negligent infliction of emotional distress. To prevail on a claim of intentional infliction of emotional distress under Utah law, a plaintiff must prove:

> (i) the defendant's conduct complained of was outrageous and intolerable in that it offended generally accepted standards of decency and morality; (ii) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (iii) the plaintiff suffered severe emotional distress; and (iv) the defendant's conduct proximately caused the emotional distress.

Prince v. Bear River Mut. Ins. Co., 56 P.3d 524, 535 (Utah 2002) (quotation and alterations omitted). "Outrageous conduct, for purposes of the tort of intentional infliction of emotional distress, is conduct that evokes outrage or revulsion; it must be more than unreasonable, unkind, or unfair." Id. (quotation omitted). When considering the denial of insurance coverage, if an insurer's reason for denying benefits under the policy is fairly debatable, then, as a matter of law, the denial does not rise to the level of outrageous conduct that could give rise to liability for intentional infliction of emotional distress. Id.

In the August Order, the court found that there is a disputed factual issue about whether

9

the EMIA letters provided grounds for a reasonable attorney to believe a claim may be filed. Therefore, it is fairly debatable whether the St. Paul policy covered the EMIA claim. As a matter of law, St. Paul's conduct does not rise to the level required for an intentional infliction of emotional distress claim.

A claim for negligent infliction of emotional distress, on the other hand, does not require outrageous conduct. Anderson Development Co. v. Tobias, 116 P.3d 323, 339 (Utah 2005). Rather,

> if the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
> (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
> (b) from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm.

Id. (quotation omitted). In this case, if St. Paul made material misrepresentations to RQN about the written notice requirement, then St. Paul should have realized that these representations involved an unreasonable risk of causing distress that might result in illness. Both Mr. Wride and Mr. Lauritzen have submitted affidavits describing the physical effect that St. Paul's denial of coverage had on them.[4] They both have stated a claim for negligent infliction of emotional distress.

CONCLUSION

---

[4]St. Paul makes much of the fact that Mr. Wride's stress-induced tremor began when Westport denied the claim and prior to St. Paul's involvement and that Mr. Wride's explanation of his emotional distress caused by St. Paul are the same as the emotional distress caused by Westport. But it is not out of the question that both Westport and St. Paul caused emotional distress and the physical manifestations were the same. This is an issue of allocation of damages rather than evidence of Mr. Wride's malfeasance.

The court GRANTS St. Paul's motion for summary judgment concerning Messrs. Wride and Lauritzen's intentional infliction of emotional distress claims because St. Paul's conduct was not outrageous. For the above stated reasons, the court DENIES St. Paul's motion on all other claims.

SO ORDERED this 18th day of June, 2010.

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
Chief District Judge